**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
:
DONNELL JACKSON,            :
                            :     Civ. No. 19-10957 (RMB)
         Petitioner         :
                            :
    v.                      :     **OPINION**
                            :
DAVID E. ORTIZ,             :
                            :
         Respondent         :
_____ :

**BUMB, United States District Judge**

Petitioner Donnell Jackson is a prisoner incarcerated in the Federal Correctional Institution in Fort Dix, New Jersey. He filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, challenging his loss of good time credits as a sanction following a prison disciplinary hearing. (Pet., ECF No. 1.) Respondent filed an answer to the petition on July 8, 2019. (Answer, ECF No. 5.) Petitioner filed a reply brief. (Reply, ECF No. 6.) The Court will decide the petition on the briefs without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court denies the petition.

I.  BACKGROUND

On February 18, 2014, in the United States District Court for the Eastern District of Michigan, Petitioner was sentenced to a

216-month term of imprisonment[1] for conspiracy to possess with intent distribute heroin and cocaine, in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(A)(I). See United States v. Jackson, 11cr20493 (E.D. Mich.) (ECF No. 256.)[2] Petitioner also received a concurrent 12-month term of imprisonment for violation of supervised release. See United States v. Wilkins, 2:04cr80368 (E.D. Mich.) (ECF No. 44); (see also Declaration of Corrie Dobovich[3] ("Dobovich Decl."), Ex. 1, ECF No. 5-1 at 6-7.) Assuming Petitioner receives all good-conduct time available to him, Petitioner's projected release date is October 20, 2026. (Dobovich Decl., Ex. 1, ECF No. 5-1 at 5.)

At FCI Fort Dix on May 19, 2018, staff member R. Yannetta issued an incident report charging Petitioner with Possession of a Hazardous Tool, a violation of Code 108. (Dobovich Decl., Ex. 3, ECF No. 5-1 at 19.) The report describes the following incident:

> On May 19, 2018, I was posted as the 5802 Officer in Charge. At approximately 1:30 pm, I began a search of Room 348. As I entered the room, I witnessed inmate Jackson, Donnell 32849-039 sitting on bunk 2 Lower and appeared

---

[1] Petitioner's sentence was later reduced to 210 months. (Declaration of Corrie Dobovich ("Dobovich Decl."), Ex. 1, ECF No. 5-1 at 8.)

[2] Available at https://www.pacer.gov.

[3] Corrie Dobovich is a Legal Assistant for the Federal Bureau of Prisons at FCI Fort Dix. (Dobovich Decl., ECF No. 5-1, ¶1.) As part of her regular job duties, she has access to inmate files maintained at FCI Fort Dix in the ordinary course of business. (Id.)

> to be folding his laundry. I ordered inmate
> Jackson to stand up and submit to a pat search
> in which he complied. I asked inmate Jackson
> if that was his bunk and he confirmed it was.
> I then ordered inmate Jackson to exit the room
> so I could begin my shakedown. Before I began
> my search, I confirmed the bunk belonged to
> inmate Jackson by using a copy of the roster
> I was carrying. As I looked under inmate
> Jackson's bunk (2 Lower), I discovered a
> homemade hammock like net hanging from the bed
> frame. When I put my hand in to the net, I
> discovered (1) gray LG cell phone, (1) USB
> cord, (1) plug and (2) homemade charging
> cables. A further search was done of the
> surrounding area of inmate Jackson's bunk and
> I discovered a wall outlet wired to receive
> the homemade charging wires that were found
> with the phone under the bunk of inmate
> Jackson. The contraband was confiscated and
> turned over to the Lieutenant's Office.

(Dobovich Decl., Ex. 3, §11, ECF No. 5-1 at 19.)

That same day, an investigation was conducted to determine whether Petitioner was guilty of possessing the cell phone. (Id., Ex. 3, §23, ECF No. 5-1 at 20.) The investigating officer spoke with Petitioner and advised him of his rights. (Id.) Petitioner stated that the incident report was "not true" and that he did not "have any idea where that cell phone came from." (Id., ¶24, ECF No. 5-1 at 21.) Petitioner informed the investigating officer that there were no staff or inmate witnesses present to verify Petitioner's version of events. (Id.) The investigating officer determined that Petitioner was properly charged and referred the incident report to the Unit Disciplinary Committee ("UDC"). (Id., Ex. 3, §26, 27, ECF No. 5-1 at 21.) A copy of the incident report

3

was delivered to Petitioner that evening. (Dobovich Decl., Ex. 3, §§14-16, ECF No. 5-1 at 19.)

On May 20, 2018, an initial hearing was held before the UDC. (Id., Ex. 3, §§17-21, ECF No. 5-1 at 19-20.) Petitioner denied the incident report and stated, "I don't know who put that under the bed. It is not mine." (Id., Ex. 3, §17, ECF No. 5-1 at 19.) The UDC referred the incident report to a Disciplinary Hearing Officer ("DHO") for disposition because the appropriate sanctions were not available at the UDC level for a Code 108 violation. (Id., Ex. 3, §19.) Petitioner received a Notice of Discipline Hearing Before the DHO. (Id., Ex. 5, ECF No. 5-1 at 25.)

A hearing before a DHO was held on May 31, 2018. (Id., Ex. 6, §I, ECF No. 5-1 at 27.) Petitioner denied that the cell phone was his and stated: "I had just got in that room a week prior and I do not know where the contraband came from and have no knowledge of it." (Id., Ex. 6, §III.B.) He further stated that "the area is a common area and anyone could have put the cell phone there" and that he had "never been found guilty for an incident report." (Id.)

In making his decision, the DHO considered the incident report, the chain-of-custody form, the photo sheet of the cell phone and Petitioner's statement, which he did not find credible. (Id., Ex. 6, §III.D, V, ECF No. 5-1 at 27-28.) The DHO determined Petitioner committed the prohibited act of Possession of a Hazardous Tool, Code 108. (Id., Ex. 6, §IV, ECF No. 5-1 at 27.) As

4

a result, the DHO sanctioned Petitioner with a disallowance of 40 days of good-conduct time and a six-month loss of privileges including commissary, telephone, e-mail, and visiting. (Dobovich Decl., Ex. 6, §VI, ECF No. 5-1 at 28.) The DHO report was completed on July 17, 2018, and Petitioner received a copy of the report on September 12, 2018. (Id., Ex. 6, §IX, ECF No. 5-1 at 29.) Petitioner exhausted his administrative remedies by challenging the DHO's decision within the Bureau of Prisons ("BOP"). (Id., Ex. 2, ECF No. 5-1 at 11-17.)

II. DISCUSSION

    A.    <u>Standard of Law</u>

28 U.S.C. § 2241 provides, in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions . . .
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless—
>    . . .
>    (3) He is in custody in violation of
>    the Constitution or laws or treaties of
>    the United States; . . .

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct." Denny v. Schultz, 708 F.3d 140, 143 (3d Cir. 2013) (citing 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20 (2008)). Based on this statutorily created right, "a prisoner has a constitutionally protected liberty interest in good time

5

credit." Denny, 708 F.3d at 144 (quoting Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing Wolff v. McDonnell, 418 U.S. 539, 556–57 (1974)).

The Supreme Court defined the due process protections required when a prison disciplinary hearing may result in loss of good conduct time. The five due process protections include: 1) the right to appear before an impartial decision-making body; 2) twenty-four hour advance written notice of the charges; 3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; 4) assistance from an inmate representative, if the charged inmate is illiterate or complex issues are involved; and 5) a written decision by the fact-finder, including the evidence relied on and the reason for the disciplinary action. Wolff, 418 U.S. at 546-71.

Further, the DHO's decision must be supported by "some evidence." Superintendent, Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Id. at 455 (quoting United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927)). Determining whether the standard has been met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the

evidence." Hill, 472 U.S. at 455. Instead, courts should determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. The BOP has substantially adopted and in some instances gone beyond these requirements by promulgating regulations governing its disciplinary procedures. Frankenberry v. Williams, 677 F. Supp. 793, 796 (M.D. Pa.) aff'd, 860 F.2d 1074 (3d Cir. 1988); 28 C.F.R. §§ 541.1 to 541.8.

B. The Parties' Arguments

1. The Petition

Petitioner asserts three grounds for relief from the disciplinary sanctions imposed by the DHO. First, he asserts there was no evidence of his constructive possession of the cell phone. (Pet., ECF No. 1 at 4.) Petitioner cites to BOP Program Statement 5270.07, arguing that all inmates who share a room must be charged with constructive possession of contraband, if it cannot be determined whom the contraband belonged to. (Id. at 4.) Petitioner concludes that because he was the only person charged, although others shared the room, he cannot be held solely responsible. (Id. at 4-5.)

Petitioner also challenges the DHO's determination that Petitioner was not credible in denying possession of the contraband. (Id. at 5-6.) Petitioner contends it was a reasonable conclusion. (Id.) The room where the contraband was found houses

7

twelve men. (Id. at 7.) Thus, Petitioner maintains that the decision to charge him and no one else was arbitrary. (Id.) Petitioner further suggests there are inconsistencies in the Incident Report about the location of the contraband. (Pet., ECF No. 1 at 5-6.)

Petitioner alleges violation of a BOP policy that requires a staff member who reports an incident in writing to identify himself in the report. (Id. at 7-8, citing 28 C.F.R. § 541.5.) Petitioner asserts he was prejudiced by the inability to confront an unidentified witness to the incident charged. (Id. at 8.)

Finally, Petitioner argues that the DHO's findings should be dismissed because Petitioner did not receive the DHO's written findings within 15 days, as required by a BOP Program Statement. (Id.) The hearing was held on July 17, 2018 and he did not receive the report until September 12, 2018. (Id.)

### 2. The Answer

Respondent submits that the petition should be denied for three reasons. (Answer, ECF No. 5 at 5-6.) Most importantly, the DHO's determination that Petitioner was in possession of the cell phone was supported by some evidence; the cell phone was found attached to the underside of Petitioner's bunk. (Id. at 16-18.) Moreover, Petitioner was afforded his due process rights; there is no due process right to receive the DHO's written report within a certain time-frame. (Answer, ECF No. 5 at 14-15.) Finally, although

not disputed by Petitioner, the sanctions imposed were within the range authorized by the applicable regulations. (Answer, ECF No. 5 at 19.)

### 3. Petitioner's Reply

In his reply brief, Petitioner argues the "some evidence" standard was not met because no contraband was found on his person and he did not know the contraband found under his mattress was there. (Reply, ECF No. 6 at 1.) Petitioner claims he could not have constructive possession without knowledge that the cell phone was there. (Id. at 2.)

Petitioner further asserts that anyone could have entered the twelve-man room during the lunch hour and put the cell phone under the mattress. (Id.) There are no locks on the rooms and 360 inmates are within that housing unit, while 2,100 inmates have access to the area during "compound moves." (Id.) Petitioner argues that the probability of the cell phone belonging to him is too low to constitute his constructive possession. (Id.)

In his reply, Petitioner raises new claims of violation of his due process rights: (1) his UDC hearing was suspended for more than two weeks, causing him to have insufficient time to appeal or prepare for the DHO hearing; (2) he was not informed that he could appeal the UDC decision nor provided with the form to do so; (3) he did not dispute the nature of the sanctions imposed because his

9

defense is that he is innocent and not subject to any sanctions. (Reply, ECF No. 6 at 3-4.)

C. Analysis

1. Identification of staff member reporting the incident

Petitioner asserts he was prejudiced because the reporting staff member did not identify himself in the incident report. The reporting staff member was identified as R. Yannetta in the incident report. (Dobovich Decl., Ex. 3, ECF No. 5-1 at 19). Therefore, this claim fails.

2. Whether the "some evidence" standard was met

The Court will address each of Petitioner's challenges to the evidence supporting his guilt in turn. First, the DHO relied primarily on the incident report in finding Petitioner guilty of possessing a cell phone, and Petitioner claims there are inconsistencies in the report. Having reviewed the incident report, the Court does not find the inconsistencies suggested by Petitioner. The cell phone was found in a net attached to the bedframe under Petitioner's mattress, which he had been sitting on before the cell was searched and the cell phone found. (Dobovich Decl., Ex. 3, ECF No. at 5-1 at 19.)

Second, BOP Program Statement 5270.07, which notifies prisoners that they must keep their assigned areas free of contraband, is not a due process guarantee that all inmates who

10

share a cell will be charged for contraband found within the shared cell. In the Third Circuit, constructive possession may be found, for purposes of meeting the "some evidence" standard in prison disciplinary proceedings, where contraband is found in a space accessible from within a prisoner's shared cell. Denny v. Shultz, 708 F.3d 140, 147 (3d. 2013). This comports with the minimal due process requirement because the prisoner is on notice that he must keep his area free of contraband. Denny, at 146. Because the "some evidence" standard does not require a reviewing court to weigh the evidence, but only to find some evidence to support the finding, this Court need not consider how many inmates had access to the underside of Petitioner's bunk. See Crosby v. Warden Lewisburg USP, 788 F. App'x 816, 819 (3d Cir. 2019) (noting the "some evidence" standard does not require weighing the evidence) (citing Hill, 472 U.S. at 455-56); see also Donohue v. Grondolsky, 398 F. App'x 767, (3d Cir. 2010) (upholding finding of guilt based on constructive possession of contraband found under the prisoner's clothes drawer, where 140 inmates had access to the dorm room).

Third, Petitioner challenges the DHO's finding that Petitioner was not credible when he argued that someone could have planted the cell phone under his bed. In determining whether the "some evidence" standard is met, courts are not to review credibility findings or weigh the evidence. See McCarthy v. Warden Lewisburg USP, 631 F. App'x 84, 86-87 (3d Cir. 2015) (prisoner's

11

"general assertions that his rights were violated because the DHO considered the adverse evidence to be more credible than his defenses" involved weighing the evidence, which is not required). Furthermore, as in Donohue, 398 F. App'x 767 (3d Cir. 2010), Petitioner's defense that the contraband could have been planted was unsupported speculation.

Fourth, Petitioner argues that the DHO's findings should be dismissed because Petitioner did not receive the DHO's written findings within 15 days but rather 57 days. Due process does not require a specific time-frame for a prisoner to receive written findings by the decisionmaker. See generally Wolff, 418 U.S. at 565. Further, BOP Program Statement 5270.09, § 541.8(h) states only that written findings will be provided "ordinarily within 15 work days of the decision."[4]

Finally, in Petitioner's reply brief, he claims additional procedural violations. A habeas petitioner "may not raise new issues and present new factual matters in a reply brief that [they] should have raised in [their] initial brief." Clifton-Short v. Johnson, No. CV 17-6193 (KM), 2019 WL 4635799, at *18 (D.N.J. Sept. 24, 2019) (quoting Judge v. United States, 119 F. Supp. 3d 270, 284 (D.N.J. 2015)) (alterations in Clifton-Short) (additional citations omitted)). Although new claims may not be raised in a

---

[4] Available at www.BOP.gov/policy.

reply brief, the Court notes that Petitioner does not have a due process right to a specific time-frame for a UDC hearing or notice that a UDC finding is appealable through the BOP administrative remedy procedures.

IV. CONCLUSION

For the reasons discussed above, the Court denies the petition for writ of habeas corpus under 28 U.S.C. § 2241. An appropriate order follows.

Date: **March 26, 2020**

                                            s/Renée Marie Bumb
                                            **RENÉE MARIE BUMB**
                                            **United States District Judge**